DISTRICT COURT.                              AUGUST 24, 1860.
                         ADMIRALTY.

## DABNEY *v*. THE MARY HOLLAND.

A vessel in a voyage from Glasgow to Philadelphia, having sustained serious injury from storms, put into the port of Fayal where money for repairs was raised on bottomry on the vessel and cargo. She was after-

wards sold at public sale on a lien for seamen's wages. Her cargo was also judicially sold. *Held:*

1. That the owners of the cargo as between themselves and the owner of the vessel in paying their respective portions were paying money which he should have paid, they being sureties for his debts, but that their relations did not affect the rights of the bottomry creditor.

2. That as among the respective owners of the cargo—the ship being a general ship—their contributory proportions of the amount to be paid should be the ratios, not of the proceeds of the judicial sales, but of the respective market values in Philadelphia ten days after the vessel's arrival; although the case being one of deficiency, the amounts payable in distribution must be determined by the results of the judicial sales.

LIBEL to enforce bottomry bond against vessel and cargo.

The following opinion was read and ordered to be filed upon consideration of the report of the clerk made under order of the court in aid of distribution of the fund in court. The facts will fully appear therein.

## CADWALADER, J.

The brigantine Mary Holland in a voyage from Glasgow to Philadelphia, having encountered serious injury from storms, and leaking dangerously, put into Fayal where she was properly repaired and refitted. The sum of the contributory amounts of general average upon her cargo appears to have constituted a large proportion of the whole expenditure incurred.

The entire sum expended was raised at Fayal upon a bottomry bond of the vessel and cargo for the amount, including the marine interest of $9,688.25 payable ten days after arrival at Philadelphia, equal in our currency to $8,073.96, which became due on 3d April, 1860. To enforce this bond against the vessel and cargo this libel was filed on the 5th of the same month. The vessel was a general ship. The respective owners or consignees of the cargo had received no statement of particular or general average, or of contributory interests. The case was, with their consent, heard summarily. After the addition of satisfactory proofs of the causes of the bottomry loan, and of the expenditures included in it, they made no per-

sistent contestation of the libellant's demand. Under such circumstances, I do not think him entitled to costs to an amount exceeding $175, which appears to have been about the sum of such charges as would have been incurred here if the case had been settled upon a dispacheur's adjustment without litigation. But the vessel has been sold for $2,600 pending the suit, under a decree in another proceeding for wages of the crew. The wages, and such additional specific charges, other than court costs, as were liens on the vessel or should be deducted from the proceeds of the sale of her, or from the freight, have been paid, or are to be paid from the proceeds of the sale under that decree in the registry of the court.

These deductions appear by the clerk's report to be $1,244.36, leaving as net proceeds of the vessel $1,355.64, which, and the amount of the freight, $1,581.73, together $2,937.37, are applicable in the first instance to the payment of the libellant's demand. His demand with interest from 3d April last will by these credits have been reduced to $5,298.06. The whole of the cargo has also been judicially sold and the proceeds paid into the registry. The net proceeds of the several items composing it have been ascertained according to the clerk's report by deducting the respective amounts of duties, freight, and other specific charges not, in their character, costs of suit, which were properly liens on the same, or on their proceeds. After these deductions, the net proceeds of the cargo, under six heads of ownership, were, according to the clerk's report, in the aggregate, $5,079.87. It appears by the same report that the aggregate amount of general average on the cargo including the addition of maritime interest was $3,201.25, which, being deducted from the net proceeds of the cargo, and credited on account of the above balance of the libellant's demand, leaves a fund of $1,878.62 towards the payment of the reduced balance of $2,096.81.

So far as the six amounts composing the $1,878.62 are to be applied towards the payment of this balance, the owners of the cargo will pay money which, as between them and the owner of the vessel, the latter partly should have paid.

They are, as between him and them, to this amount, if not in any greater amount, sureties for his debt. His default in not exonerating them from this liability does not, however, affect the right of the bottomry creditor. As among the respective owners of the cargo their contributory proportions of this amount should be the ratios not of the proceeds of the judicial sales, but of the respective market values in Philadelphia ten days after the vessel's arrival. But, though the *proportions* are to be thus ascertained, the *amounts* payable in the case which has occurred, of a deficiency, are to be determined by the results of the judicial sales, whatever may have been the attendant sacrifice, or however unequal or disproportional such sacrifice may have been as to different portions of the cargo. To the general truth of this remark, an exception might have been admitted, if the sacrifice upon any one of the items composing the cargo had been consequent upon its deterioration from internal decay since it was taken into legal custody; as to one of the items, there was, in this respect, some apparent doubt. But, the doubt is resolved by the clerk's report, from which it appears that the deficiency in the proceeds is the result of the sacrifice of which there is always more or less unavoidable hazard in a judicial sale.

The foregoing remarks, and the clerk's report will perhaps facilitate the adjustment of claims of owners of the cargo whose funds have been absorbed in the payment of the bottomry debt upon the owners of the vessel or underwriters on her, and possibly the adjustment of claims of owners of the cargo, or their underwriters respectively, among themselves. But, the value at which the vessel should, for the purposes of such adjustments, be estimated elsewhere than in this court under whose process she has been sold, would perhaps depend upon views which cannot properly be considered here.

The decree will be that the several amounts reported by the clerk as deductions from the gross proceeds of the sales of the vessel and several items respectively composing the cargo, where not already paid, shall be paid out of the proper funds in the registry of the court, after which the costs remaining un-

paid, (not including any costs of the several claimants) are to be paid out of the said funds, which costs the clerk will ascertain, and that the whole remaining proceeds of the sales of the vessel and several items composing the cargo be paid to the libellant.